We'll hear the next case on the calendar, Logan v. Town of Windsor. Good morning, Judge. I'm Mrs. Therese Reddy Logan, and I'd like to thank you and the court for your time today. I am a pro se litigant, and I will explain more momentarily. I'd like to state and start off by saying I would like justice for the crimes that have been perpetrated upon me. My life matters. I'm the victim, even though the defendants and their attorneys wish to talk about everything except the day in question, my pending lawsuit, and the statute of this case. After submitting complaints and appeals over a dozen times with only dismissals and denials and no explanation, I went to the federal court in Binghamton, New York. Federal court had my case for several months. I received a letter from Magistrate Justice Peebles stating I have been granted. Several more months passed, and the federal court asked me to submit my appeals to their court three times, and I did. I was directed to fill out more documents. I then received another letter from Magistrate Justice Lorabelle and Assistant Judge Glenn T. Sutterby, granted me IFP also. I was told to send those documents to Thurgood Marshall, U.S. Courthouse. Several months, several more months had passed, and I received a letter from the court stating notice of hearing date for today. I'd also like to state every statement and comment I will be speaking of today are true, and I backed up with proof and evidence, including photos and written letters from the doctors. I'd also be willing to submit to a polygraph test, and I have asked for writ of citerari. Included in those documents are letters from neurosurgeon Dr. Stephen Jacobs, who performed both surgeries, one on my lower back, a 6 1⁄2 scar, the other on the right side of my neck, a 2 1⁄2 scar, plates and screws, and cadaver bones. Dr. Jacobs stating the spine decompression was necessitated by the accident that occurred in March of 2011. A letter from my primary care doctor, Jennifer Reich, diagnosed me with PTSD. A letter from my therapist, Dr. William Connors, also diagnosed me with PTSD. The original lawsuit filed by my former attorney was for $209,000. To date, I am out of over $264,000, not including overtime or on-call, pain and suffering, defamation of character, and emotional distress. Time passed. I had not heard from my attorney, my former attorney, in two to three years. I went back to Supreme Court, to the clerk's office in Binghamton, New York. I found out there was a scheduled court deposition at 9 a.m. on May 15, 2015, that I wasn't even informed about by my former attorney. He didn't even acknowledge me, my presence in the courtroom that day. The presiding judge called us into his chambers and spoke to me. After a few minutes, my former attorney was dismissed from my case in the courtroom by the judge. A few years before that dismissal, attorney Eric Gruber from my former attorney's law firm represented me for the first video deposition in December of that year, nine months after the incident occurred. Shortly after that first deposition, attorney Gruber decided to relocate to Florida. Documents show, after speaking with over 25 attorneys, no one would take my case. My main concern, once again, is the statute. At that point, I had no other choice but to represent myself, per se. The first brief or a complaint that was sent to me by the defendant's attorney had 1,000 plus pages. Most of it was redacted. I did submit that document for the appeals court to see. On the day in question, after my body was plummeted with snow, rock, salt, and gravel thrown on me by a speeding 50,000-pound, 20-ton snow plow truck operated and driven by Mr. Robert Brinks, his wingman, Greg Story, operating the snow plow blade in the down position, pushing the snow, rock, salt, and gravel, traveling at a high rate of speed, possibly 40 to 45 miles an hour, if not faster. I turned so as not to get hit in the face. Snow, rock, salt, and gravel plummeted my body from my neck to my lower back and down my legs. Mr. Brinks and Mr. Story left the scene. Suddenly, I heard the truck's engine again. They were slowly driving back after 10 minutes or so, while I stood shivering, clearing the snow, rock, salt, and gravel off my body and my car. I was in shock. I feared for my life. I thought they had come back to finish me off. I looked up, only to see both defendants pointing and laughing and making fun at what they had just done to me. Perhaps Mr. Brinks and Mr. Story should read Vehicle Traffic Law for New York State, F1103B. It states in one of the rules, reckless disregard is a deliberate decision to ignore a likely harm. Defendant's attorney submitted a document showing New York Municipal Reciprocal Insurance Company for the Town of Windsor has a $1 million insurance policy to cover their employees for accident claims. I spoke with the Town of Windsor adjuster, Heron Persuade, and tried to negotiate down to $90,000. However, he never got back to me. I also left a message with the defendant's attorney to inform him I'd like to talk about a settlement. He never returned my call either. Town of Windsor originally stated they aren't responsible for their employees. However, they eventually paid for both of my surgeries, but refused to pay any out-of-pocket medical bills or physical therapy. I pay $25 a month, so my medical bills won't go to collections and ruin my credits. Defendants also committed perjury multiple times during the video deposition, stating incident happened at 7 a.m. It was actually 6, 10 in the morning. They said that I lived in my home for only six months. Actually I had lived here 3.5 years. There was three to four inches, they said there was three to four inches of snow. It was more like 12 to 16 inches of snow. The speed limit, they said, was 55 miles an hour. Town speed limit is 30 miles an hour. I was parked in the road, is what they stated. I was parked on my property next to Williams Road. Totals and evidence are submitted to show that everything I've stated here is the truth. There is more, however, I'm sorry. After over 40 years in the medical field, Your Honor, I resigned from my job due to my injuries. Your Honor, it hurts to stand, it hurts to walk, it hurts to sit, it hurts to lay down. And just a few months ago after burying my mom, I was outside with my husband. This was December. These individuals, my understanding, I heard a couple years ago that one of them has retired. I'm not sure if it is, but they are still speeding up and down roads here in the town of Windsor. I'm located at the top of a hill, and there's only three houses here at the end of Williams Road where we live at. And children that go to school, not only do I worry about them, you know, I'm still concerned about myself as well. I wouldn't do this to a dog, let alone to a human being. Thank you. I'm sorry. We've given you extra time. Thank you, sir. Thank you, Your Honor. I appreciate that. Pursuing your argument. Yes. I just want one question I wanted to ask you so that I'm clear. Are you challenging the district court's denial of leave to amend or its denial of your motion for appointment of counsel? I just want to be clear as to what you're asking us. I'm not sure if I totally understand your question. It has anything to do – I don't know if I missed a page here or not. I might have missed a page. I asked for over 25 – I talked with over 25 attorneys. Nobody would represent me. As a matter of fact, before I received a letter from your court, I called one of the attorneys that seemed like he was interested back here years ago and could possibly help me. And one of the things he said to me was that, you know, you're not going to – before he hung up, after he told me he wouldn't be able to help me, he said, I've got to tell you something. And I said, what? He said, you're not going to win this case. I said, well, what do you mean? He said, well, nobody ever wins these cases. They always win. And I'm going, this doesn't make any sense. There are people out there, including myself, who are being maimed and killed, okay, by these snowplow trucks and they're speeding. I mean, the fastest they're supposed to go is when they're on the highway driving. Because I take it – I mean, based on the New York State law that I had read, as I said, I didn't state all of the information that's in the New York State law. That's S as in Sam, 1103, and then D. I didn't state everything. I just stated the one where it says reckless disregard is a deliberate decision to ignore a likely harm. These guys, I mean, even as late as last month, I think it was the 9th of Wednesday, you know, they're coming down the street at a high rate of speed. It is so scary. I never had a chance to do anything. I mean, I was so scared. I was literally burning rubber, Your Honor, just trying to get off of my property. Hindsight is 20-20. I should have gone back into my house. I should have dialed 911. I'm still shaking behind this. When wintertime comes, this is – it's always been a good time for me, but it's like the worst time here. Your Honor, I'm sorry. I don't even know if I answered your question. I'm just – I wanted to get this out. And once again, I want to state, you know, I have not dragged this case out this long. This has a lot to do with the fact that I've submitted documents. I've submitted appeals, and I submitted a second appeal, and they sent me to another court. Originally, and I found out that – and this is what happened. I was on Cymbalta. Cymbalta, two-sided sex, a short and long-term memory loss, okay? When I first went to the Supreme Court here in Binghamton, New York, and they told me that I had – this case was dismissed without prejudice. Unfortunately for me, I'm from the medical field. I've been helping to save lives and have longevity in people's lives for over 40 years. When he said that to me, you know, the memory loss, I forgot about it. So after my case was dismissed in the Supreme Court, I went straight to the clerk's office to ask them what I should do. And, yes, it was my fault for not saying without prejudice because I unfortunately didn't remember that. Well, they immediately sent me to the next court, you know, the next court. And so that's why I never went back. Ms. Logan, one of the things that a litigant has to do in federal court is to plead federal question jurisdiction because it arises – the claim arises under the Constitution. And so what's the federal law here that you're relying on? I'm not sure. As I said, I'm a layperson. I'm not sure if I understand your question other than the fact that I've gone to every court here in New York State, okay? And all the courts have turned me down, dismissed my case, denied it with no explanation at all. When I found out about federal court, that was when I went to federal court. And federal court is the only court that's taken the time to listen, to hear me, and to keep me – I mean, I don't know what else to say, Your Honor, except, you know, no one would help me. I couldn't get any help from the court. I couldn't get any help from any attorneys. And the federal court is the only court that helped me, and they were the ones that sent me to your court. As a matter of fact, I've been in Thurgood Marshall Court. I did submit documents to Thurgood Marshall before. I'm not sure how long ago. It was over a year, maybe close to two years. And they did the same thing. They denied my case. And then, like I said, several months later, that's when I found out about the federal court and I went there. I mean, you can ask me anything about surgery and I can tell you. I don't know that much about the law except I've always kept the law. I never even had a parking ticket, Your Honor. You know, so I'm doing the best I can as a layperson. Thank you. If my colleagues do not have further questions, we'll hear from your adversary and then you'll have one minute in rebuttal. Okay, thank you, Your Honor. Okay, we'll hear from Mr. Bowman. May it please the court. Tom Bowman of Kauffman and Gerhardt on behalf of defendants at the town of Windsor, New York Municipal Reciprocal Insurance Company, Robert Briggs and Greg Story.  It is uncontroversial that federal rules of civil procedure 12B1 and 12H3 require the dismissal of a complaint if the court determines that it lacks subject matter jurisdiction. And this is Logan's most recent attempt to bring her claim in federal court. This question of subject matter jurisdiction was given careful consideration. And according to the Magistrate Lowbrick's Order and Report of Recommendation, which was adopted by the judge for the decision in order, the District Court for the Northern District of New York did not have subject matter jurisdiction. And it is because Mrs. Logan's complaint does not allege a federal question. On the basis of the complaint, this is not a case where diversity of jurisdiction would grant subject matter jurisdiction. And having made that initial determination, I believe that determination is correct. The court did seem not to reach other defects and doctrines which would warrant dismissal of Mrs. Logan's complaint. And chiefly, I will say the doctrine of res judicata. This is Mrs. Logan's third attempt to sue this case on the same facts against the same defendants. And it's beyond lack of subject matter jurisdiction. Res judicata should also preclude this matter from going forward any further. And that's my first two minutes. Thank you, Your Honor. Hello? You suggest that the plaintiff's filings are facially malicious. Oh, my gosh. To this characterization. Your Honor, am I supposed to respond here now? No, not yet. Okay, I'm sorry. We'll tell you. Thank you. Judge, I do. And I don't say that lightly. I will say that my co-counsel and I have been restrained and patient and deferential to Mrs. Logan's pro se status. But when my co-counsel's name starts to enter the pleadings and is accused of basically of perjury or defamation of character, that rises to the level of malice. Especially when after two times through, once in the state court level and once in the federal court level, Mrs. Logan continues to bring these claims. And I understand that she may feel very strongly that she agrees with the decisions of the courts that have been handed down. We had hoped that after two times through, Mrs. Logan would, though she may not agree, accept those decisions. But Mrs. Logan appears not willing to do so. And so for those reasons, I believe my accusations of malice are warranted. Any questions from my colleagues? No, thank you. Okay. Hello? Ms. Logan, you'll have one minute in rebuttal. Okay. I'm not sure if I understand this attorney, the information he just gave you completely. First of all, they switched. They've done a lot of, played a lot of games here with the judge. They've switched attorneys on me. I've never even met this attorney, nor have I ever spoken to him before, okay? As far as the federal court is concerned, as I stated earlier, I have submitted, and I hope I'm not misunderstanding here, I have submitted my documents to every court here in New York State as well as Washington, D.C. And every response I got was denied or dismissed with no explanation at all, okay? And as far as jurisdiction, when federal court asked me about jurisdiction, I said, well, and I hope I'm not confusing this, I live in Broome County, federal court, town of Windsor, and Binghamton, New York is all Broome County. I thought that's what they meant by jurisdiction. And so I have appealed my case every time the courts have asked me to appeal. This is not the third time, so I'm not sure if I understand what that attorney is talking about. Because as I said, this is the first time I've heard his voice, and they've already switched him from the original attorney, so I'm not sure what he's exactly talking about. The only thing that I am sure of is that justice, I need justice, Your Honor, because I can't believe the way these individuals have treated me and how much they've lied. The lies that I mentioned to you were just a few, and those lies were during the first deposition. It was a deposition that was in the courthouse in Binghamton, New York. There was a big screen TV on the wall, and they sat there and they told lie after lie after lie. I have submitted photos. I have submitted documents that prove that what they were saying are not true. The weather, three to four inches. I got a weather report that says it's 12 to 16 inches. Your Honor, if you would like for me to submit those same documents that I've submitted over a dozen times to the courts, I would be more than glad to submit that evidence to this court as well. Thank you, Your Honor. Thank you for both your arguments. The court will reserve decision.